**Rodney CLARK, Plaintiff-Appellee,**

v.

**DeLAVAL SEPARATOR CORPORATION, Defendant-Appellant.**

No. 79-1753.

United States Court of Appeals, Fifth Circuit. Unit A

March 19, 1981.

Rehearing Denied May 20, 1981.

Leonard E. Davis, John H. Minton, Jr., Tyler, Tex., for defendant-appellant.

Harkness, Friedman & Kusin, Texarkana, Tex., Cahill Hitt, Houston, Tex., Harry B. Friedman, Texarkana, Tex., for plaintiff-appellee.

Before COLEMAN, RUBIN and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this diversity suit, appellant DeLaval Separator Corp. (DeLaval) appeals a judgment on a jury verdict finding DeLaval liable for breach of an implied warranty of merchantability under Texas law in the sale of a milking system that appellee Rodney Clark purchased and used in his dairy business.

On January 26, 1973, Clark, a dairy operator, entered into a written sales contract with Sulphur Springs Farm Store for the purchase of four Model 200 milking machines and an automatic wash system to be used in Clark's dairy business. This equipment had been manufactured by appellant DeLaval, and was sold and installed by Sulphur Springs Farm Store. Sulphur Springs Farm Store did not sell the milking machines as agent for DeLaval and is not a party to this suit. The equipment was delivered and installed in February, 1973, was used by Clark for approximately three years.

In 1976, Clark purchased two more Model 200 milking machines. These two additional machines were also purchased pursuant to a written sales contract, and were installed by Sulphur Springs Farm Store in March of that year.

Later in 1976, Clark's cattle herd suffered a severe epidemic of mastitis, an udder infection. Clark attributed the epidemic to the milking equipment he purchased in 1973 and 1976. Clark removed the milking equipment from his dairy operation in March of 1977.

On March 11, 1977, Clark filed this suit against DeLaval in the United States District Court for the Eastern District of Texas, seeking recovery for economic losses incurred by his dairy business during 1976 and the early part of 1977. The suit was based on two legal claims, one for an alleged breach of an implied warranty of merchantability, Tex.Bus. & Comm.Code Ann. § 2.314 (Vernon 1968), and one for the alleged violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex.Bus. & Comm.Code Ann. § 17.41 *et seq.* (Vernon Supp.1980). Clark sought $206,000.00 in damages, treble damages under the Texas Deceptive Trade Practices Act, and attorney's fees.

The jury verdict found liability for breach of an implied warranty of merchantability, but rejected Clark's claim under the Texas Deceptive Trade Practices Act. Damages were assessed at $46,000.50, and the district court entered judgment for that amount.

After making unsuccessful motions for judgment notwithstanding the verdict and a new trial, DeLaval now appeals that judgment. Since the jury rejected Clark's claim under the Texas Deceptive Trade Practices Act and based its award on Clark's claim for breach of an implied warranty of merchantability, the present appeal involves only the warranty claim. DeLaval's appeal presents four issues for our determination: (1) whether a warranty of merchantability from DeLaval to Clark was implied in the contracts between Clark and Sulphur Springs Farm Store for the two sales of the milking equipment; (2) whether Clark's action for breach of an implied warranty as to the 1973 equipment was barred by the four-year limitations period in § 2.725(a) of the Texas Business & Commerce Code, Tex.Bus. & Comm.Code Ann. § 2.725(a) (Vernon 1968); (3) whether there was sufficient evidence to sustain the jury's verdict of breach of warranty of merchantability; and (4) whether the jury verdict was fatally tainted by the introduction into the jury room by a juror of extraneous matter not in evidence. Since we agree with appellant DeLaval on the third issue, that involving the sufficiency of the evidence, we reverse the judgment below and render for DeLaval.

## I. Implied Warranty of Merchantability

Under Texas law, a warranty of merchantability is implied in a contract for the sale of goods by a merchant unless the warranty is excluded or modified in accordance with statutory requirements. Tex. Bus. & Comm.Code Ann. § 2.314(a) (Vernon 1968). Under Texas law, a manufacturer of a product may be held liable to an ultimate purchaser of that product for economic loss which results from the manufacturer's breach of the implied warranty of merchantability of § 2.314, without regard to privity of contract between the parties. *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex.1977). Therefore, an implied warranty of merchantability under § 2.314 arose between Clark, the purchaser, and DeLaval, the manufacturer, as a result of the purchase of the equipment from the retailer, Sulphur Springs Farm Store, despite the absence of privity of contract between Clark and DeLaval.

An implied warranty of merchantability arising under § 2.314 may be disclaimed by the seller under § 2.316 of the Texas Business & Commerce Code, Tex.Bus. & Comm. Code Ann. § 2.316 (Vernon 1968). Section 2.316 provides, in pertinent part:

  (b) Subject to Subsection (c), to exclude or modify the implied warranty of mer-

chantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.

    \*    \*    \*    \*    \*    \*

(c) Notwithstanding Subsection (b)

(1) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

Tex.Bus. & Comm.Code Ann. § 2.316 (Vernon 1968).

The contracts of sale between Clark and Sulphur Springs Farm Store contained expressed disclaimers of any and all implied warranties on the part of Sulphur Springs Farm Store. They did not, however, expressly disclaim any warranties on the part of DeLaval, nor did DeLaval itself make any implied warranty disclaimers. DeLaval argues, though, that the implied warranty disclaimers in the contracts between Clark and Sulphur Springs Farm Store served to disclaim not only any implied warranties between Clark and Sulphur Springs Farm Store, but also any implied warranties which otherwise may have arisen between Clark and itself, the remote manufacturer.

We disagree. The disclaimers in the Clark-Sulphur Springs Farm Store contracts of any implied warranties certainly satisfied the requirements of § 2.316, and therefore would have insulated Sulphur Springs Farm Store from any liability for breach of an implied warranty had Sulphur Springs Farm Store been a party to this suit. Contrary to DeLaval's contention, however, these disclaimers did not similarly insulate DeLaval from liability.

■ Section 2.316 does not expressly indicate whether a manufacturer may rely on a subsequent retailer's disclaimer of implied warranties to avoid liability for the sale of unmerchantable goods, or whether he must instead make his own disclaimer or have one made expressly for him. It appears, though, that in order for a manufacturer to disclaim under Texas law the two implied warranties created by the Texas version of the Uniform Commercial Code, *i. e.*, that of merchantability (§ 2.314) and of fitness for a particular purpose (§ 2.315), the manufacturer's implied warranties must be expressly excluded as such. In dispelling the concern that the lack of a privity requirement in a warranty action would lead to unlimited liability for manufacturers, the Texas Supreme Court in *Nobility Homes, supra,* noted that § 2.316 "allows manufacturers to restrict their liability by the exclusion or modification of both implied and expressed warranties." 557 S.W.2d at 82. This statement implies that § 2.316 contemplates that a seller, whether a manufacturer or retailer, seeking to rely on the protection of that provision for himself must have made a disclaimer which satisfies that provision, or that at least the disclaimer must explicitly name the manufacturer as a disclaiming party. *See also Griffin v. H.L. Peterson Co.,* 427 S.W.2d 140, 144 (Tex.Civ.App.—Dallas 1968, no writ) (manufacturer's warranty deemed unimportant in breach of warranty action against retailer, in part because warranty "[was] stated to be the warranty of manufacturer only").

This conclusion is further supported by a consideration of the policy underlying § 2.316, which, through its requirement that any disclaimer language be clear and conspicuous, seeks to protect a buyer from surprise caused by unexpected and unbargained-for language of disclaimer. Tex.Bus. & Comm.Code Ann. § 2.316, Comment 1 (Vernon 1968). A disclaimer is "conspicuous" "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Tex.Bus. & Comm.Code Ann. § 1–201(10) (Vernon 1968). A retailer's disclaimer for his own benefit would not, and ought not be deemed

to, give a reasonable person (buyer) notice that the manufacturer was also disclaiming any implied warranties. To the contrary, a manufacturer's attempted use of a retailer's disclaimer to insulate himself from liability might very well surprise a remote buyer. *See Rehurek v. Chrysler Corp.*, 262 So.2d 452 (Fla.Dist.Ct.App.1972) ("average purchaser should not be called upon to equate the warranties made to him by the seller with warranties made by [the manufacturer]").

DeLaval cites *Henderson v. Ford Motor Co.*, 547 S.W.2d 663 (Tex.Civ.App.—Amarillo 1977, no writ), *Lankford v. Rogers Ford Sales*, 478 S.W.2d 248 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.), and *Boyd v. Thompson-Hayward Chemical Co.*, 450 S.W.2d 937 (Tex.Civ.App.—Tyler 1970, writ dism'd), in an effort to support its argument that a retailer's disclaimer in its contract with a purchaser also insulates the manufacturer. In each of these cases, however, the disclaimer expressly excluded certain warranties on the part of the manufacturer; the manufacturer made a disclaimer himself. In contrast, no disclaimers expressly excluding implied warranties from DeLaval were made in the instant case, either in the materials accompanying the milking equipment or in the Clark-Sulphur Springs Farm Store contracts. Accordingly, the cases cited by DeLaval on this point are not persuasive of its contentions.

■ It therefore appears that under Texas law a manufacturer seeking to disclaim implied warranties must be able to point to a disclaimer which expressly mentions him as excluding certain or all implied warranties. He may disclaim such warranties either by doing so in the materials he includes with the goods, *see Emmons v. Durable Mobile Homes, Inc.*, 521 S.W.2d 153 (Tex.Civ.App.—Dallas 1974, no writ), *Lankford*

*v. Rogers Ford Sales*, 478 S.W.2d 248 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.), or by joining as a disclaiming seller in the contract between the retailer and the remote purchaser.[1] Since there was no implied warranty disclaimer expressly naming DeLaval as a disclaiming party in the case at hand, in either the materials that accompanied the milking equipment, the Clark-Sulphur Springs Farm Store contracts, or otherwise, DeLaval is subject to an action for an alleged breach of its implied warranty of merchantability.

## II. Statute of Limitations

■ DeLaval contends that Clark's action for breach of an implied warranty of merchantability as to the 1973 equipment was barred by the four-year limitations period contained in § 2.725(a) of the Texas Business & Commerce Code, Tex.Bus. & Comm. Code Ann. § 2.725(a) (Vernon 1968), and that the district court, in allowing the jury to consider the 1973 equipment in addition to the 1976 equipment, committed reversible error.

Section 2.725 of the Texas Business & Commerce Code provides, in pertinent part:

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

\* \* \* \* \* \*

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made*, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

\* \* \* \* \* \*

---

1. There may be other methods by which a manufacturer may disclaim implied warranties vis-a-vis a remote purchaser, such as by being an expressed third party beneficiary of a disclaimer in the retailer's contract that explicitly disclaims any implied warranties by the manufacturer. We do not, however, express an opinion on the legal effectiveness of these other methods.

Tex.Bus. & Comm.Code Ann. § 2.725 (Vernon 1968) (emphasis added).

Under § 2.725(b), Clark's cause of action for breach of an implied warranty of merchantability accrued when the breach occurred. Under the italicized portion of § 2.725(b), the breach occurred when tender of delivery was made, unless the exception in subdivision (b) of § 2.725 applies in the instant case. That exception provides that a cause of action for breach of warranty accrues upon actual or constructive discovery of the breach when the warranty "explicitly extend to the future performance of the goods." *Id.* § 2.725(b).

Clark contends that this exception applies here. He argues that his cause of action therefore accrued not on the date of delivery, but when the defect in the milking system was discovered, which supposedly occurred within the four-year limitations period.

Clark's contention is without merit. Although there appears to be no specific authority in Texas on the subject, an implied warranty by its nature cannot "*explicitly extend to future performance*" and thus does not fall within that exception. *General Motors Corp. v. Tate,* 257 Ark. 347, 516 S.W.2d 602, 606 (1974); *Everhart v. Rich's Inc.,* 128 Ga.App. 319, 196 S.E.2d 475 (1973); *Voth v. Chrysler Motor Corp.,* 218 Kan. 644, 545 P.2d 371 (1976); *Wilson v. Massey-Ferguson, Inc.,* 21 Ill.App.3d 867, 315 N.E.2d 580 (1974); *Holdridge v. Heyer-Schulte Corp. of Santa Barbara,* 440 F.Supp. 1088 (N.D.N.Y.1977); *Standard Alliance Ind. v. Black Clawson Co.,* 587 F.2d 813, 820 (6th Cir. 1978); *Continental Oil Co. v. General Am. Transp. Co.,* 409 F.Supp. 288 (S.D.Tex.

1976) (Oklahoma law); *see also* J. White & R. Summers, Uniform Commercial Code § 11–8 (1972).[2]

Clark's cause of action for breach of an implied warranty of merchantability, therefore, accrued on the date of tender of delivery. The contract of sale for the original four units was signed on January 26, 1973, and delivery occurred on February 19, 1973. Clark conceded at trial that delivery on the 1973 equipment occurred no later than March 1, 1973. Accepting March 1, 1973 as the date of delivery, Clark's cause of action for breach of an implied warranty of merchantability as to the 1973 equipment accrued on that date, under § 2.725(b). Clark's lack of knowledge of the alleged breach at that time was irrelevant.

Clark brought this suit on March 11, 1977, more than four years after the accrual of the cause of action as to the 1973 equipment. His suit as to that equipment thus was barred by § 2.725. The district court therefore erred in allowing the jury to consider, over DeLaval's objection, both the 1973 equipment and 1976 equipment in the breach of implied warranty action rather than only the 1976 equipment. Since the jury returned only a general verdict, rendering it impossible to determine on which contract it based its verdict, and since there is insufficient evidence to support a verdict with respect to the 1976 equipment, as is discussed in part III, *infra,* the district court's error was reversible.

### III. Sufficiency of the Evidence

DeLaval next contends that the evidence was insufficient to sustain the jury's verdict

---

**2.** Further, the Texas cases on which Clark relies in support of a "discovery" rule for the accrual of a cause of action for breach of implied warranty under Texas law, *see, e. g. Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas, Inc.,* 351 S.W.2d 119 (Tex.Civ.App.— San Antonio 1961, writ ref'd n. r. e.), indicate Texas law prior to the enactment of § 2.725 in 1967, which changed Texas law. In addition, in the case plaintiff cites that used a discovery rule even though it was decided after 1967,

*Metal Structures Corp. v. Plains Textiles, Inc.,* 470 S.W.2d 93 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.), the cause of action had accrued prior to 1967 and thus was decided under pre-1967 Texas law, pursuant to subdivision (d) of § 2.725. Subdivision (d) provides that "[§ 2.725] does not . . . apply to causes of action which have accrued before this title becomes effective." Tex.Bus. & Comm.Code Ann. § 2.725(d) (Vernon 1968).

of breach of an implied warranty of merchantability. We agree.

■ For goods to be merchantable, they must be, *inter alia*, fit for the ordinary purposes for which such goods are used. Tex.Bus. & Comm.Code Ann. § 2.314(b)(3) (Vernon 1968). To recover from a manufacturer on a theory of implied warranty under Texas law, one must establish that there is a defect in the object sold as it left the manufacturer. *Jack Roach-Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262 (Tex.1967); *Kriedler v. Pontiac Division of General Motors Corp.*, 514 S.W.2d 174 (Tex.Civ.App.— Texarkana 1974, writ ref'd. n. r. e.): *Jones v. Philco Distributors, Inc.*, 416 S.W.2d 611 (Tex.Civ.App.—Ft. Worth 1967, no writ). The defect may be one of design, material, or manufacture. *Ethicon, Inc. v. Parten*, 520 S.W.2d 527 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ).

■ Clark failed to meet this burden. He offered no evidence specifically identifying a defect, of either design or manufacture, in the milking system, much less one that existed when it left DeLaval's hands. Clark's evidence basically showed only that his cows developed mastitis after he purchased the two additional milking units in 1976. Clark's only witness who attempted to connect Clark's losses with the DeLaval milking machines was Dr. Hubert Schull, who was a veterinarian and the city milk inspector. With respect to the presence of a defect in the milking equipment, Dr. Schull testified only that milking machines *in general* cause mastitis, primarily by what is commonly known as "slippage," which is the introduction of air between the cow's teat and the milking machine inflation. He testified that slippage can occur in all models of milking machines. He also admitted that mastitis can be caused by many factors other than milking machines, and that all milking machines injure a cow's udder at least to some extent.

Dr. Schull did express an opinion, based only on the temporal relationship between the 1976 purchase and the mastitis, that the DeLaval milking equipment caused the disease.[3] In his opinion, the mastitis may have been caused either by the slipping of the teat cup or by the milking dry of the front two quarters of the cow's udder before the back two quarters were milked. According to Dr. Schull, this latter phenomenon occurs "quite often" with milking machines. Dr. Schull did not, however, conduct any tests on Clark's milking machines or Clark's herd, nor did he or anyone else investigate to determine whether "slippage" was the cause of mastitis in Clark's cows. Further, he admitted that he did not have the expertise to express an opinion as to the inadequacy of the design or mechanics of milking machines. Moreover, neither he nor any of Clark's other witnesses refuted DeLaval's expert testimony that the Model 200 milking machine was designed in such a manner that, if properly used, it would decrease rather than increase the incidence of mastitis.

We believe that this evidence was insufficient to establish the presence of a defect in the DeLaval milking machines purchased by Clark when they left DeLaval's hands. Since there was insufficient evidence that the DeLaval milking machines caused the mastitis, and no evidence that they caused any more mastitis than other milking machines on the market, it cannot be said that the DeLaval milking machines were not fit for the ordinary purposes for which milking machines are used. Tex.Bus. & Comm.Code Ann. § 2.314(b)(3) (Vernon 1968). " 'Merchantable' is not a synonym for perfect," J. White & R. Summers, Uniform Commercial Code § 9–7 (1972); and a manufacturer of a product is not an insurer of that product. *Shamrock Fuel & Oil Sales Co. v. Tunks*, 416 S.W.2d 779 (Tex.1967).

We therefore hold that there was insufficient evidence in the record to support the

---

**3.** It is this testimony linking mastitis to the 1976 purchase which made desirable the consideration of the statute of limitations question

as to the 1973 machines instead of disposing of the entire case on the substantial evidence issue.

jury's verdict in favor of Clark. *Kelly v. Shamrock Oil & Gas Corp.*, 171 F.2d 909, 911 (5th Cir. 1948), *cert. denied*, 337 U.S. 917, 69 S.Ct. 1159, 93 L.Ed. 1727 (1949); *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124, n.6 (5th Cir. 1978). We accordingly reverse the district court's judgment in favor of Clark and render judgment in favor of DeLaval.

Since we reverse and render for DeLaval, it is unnecessary for us to address DeLaval's contention on appeal that the jury verdict was fatally tainted by jury misconduct.

REVERSED AND RENDERED.