**HAMMERMILL PAPER COMPANY,**
**Plaintiff,**

v.

**PIPE SYSTEMS, INC., Defendant and**
**Third-Party Plaintiff,**

v.

**PHILLIPS DRISCOPIPE, INC. and**
**McCullough Associates, Inc. of Murfreesboro, Tennessee, Third-Party Defendants.**

**Civ. A. No. 83–001 Erie.**

United States District Court,
W.D. Pennsylvania.

March 7, 1984.

John M. Wolford, MacDonald Illig Jones & Britton, Erie, Pa., for plaintiff.

Theodore F. Schwartz, Barry S. Ginsburg, Clayton, Mo., John G. Gent, Erie, Pa., for Pipe Systems, Inc.

Mark E. Mioduszewski, Erie, Pa., for Phillips Driscopipe, Inc.

Paul W. Roman, Jr., Dickie, McCamey & Chilcote, Pittsburgh, Pa., Kenneth G. Vasil, Elderkin, Martin, Kelly, Messina & Zamboldi, Erie, Pa., for McCullough.

## OPINION

WEBER, District Judge.

The third-party defendant Phillips Driscopipe, Inc. (hereinafter "Phillips") has moved for summary judgment based, in part, upon a limitation provision governing warranty actions found in a distributor's agreement executed jointly with the third-party plaintiff Pipe Systems, Inc. (hereinafter "Pipe Systems").

Pipe Systems is a Missouri corporation who supplied the plaintiff Hammermill Paper Company (hereinafter "Hammermill"), located at Erie, Pennsylvania, with certain effluent pipe liners manufactured by Phillips in May 1981. In December, 1981 and January, 1982 Hammermill discovered a breach in the system resulting in the discharge of effluent. It filed this lawsuit against Pipe Systems on January 3, 1983. On March 23, 1983 Pipe Systems filed a third-party complaint against Phillips for contribution or indemnity based on theories of strict liability in tort and breach of various express and implied warranties. Phillips has moved for summary judgment and the parties have briefed the issues. The matter is now appropriate for disposition.

It is incumbent upon the court in passing upon motions for summary judgment to determine whether there exists a genuine issue as to any material fact, the absence of which would entitle the moving party to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c). One who moves for summary judgment has the burden of demonstrating that no issue of fact exists, *Fairbanks, Morse & Co. v. Consolidated Fisheries Co.*, 190 F.2d 817, 824 (3d Cir. 1951), and the court must draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). It is also established that a party opposing such a motion "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits ..., must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(c).

 The court must first determine the question of the applicable state law. We are bound to apply the substantive law of the state to which the forum state, Pennsylvania, would have turned had this suit been filed in a state court. The distributor's agreement executed by Phillips and Pipe Systems states: "This Agreement

shall be governed by and construed and enforced in accordance with the laws of the State of Texas." A Pennsylvania court would apply Texas law consistent with the agreement of the parties. 13 Pa.C.S.A. § 1105(a) (Supp.1983), *see also, Aluminum Co. of America v. Essex Group, Inc.,* 499 F.Supp. 53, 59 (W.D.Pa.1980); *Admiral Corporation v. Cerullo Electric Supply Co.,* 32 F.R.D. 379, 381 (M.D.Pa.1961). Accordingly, we must enforce the agreement as well and apply Texas law. *Klaxon v. Stentor Mfg. Co. Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Pipe Systems alleges that Phillips breached "specific and general warranties with regard to the quality of the pipe and the fitness of the pipe for the purposes for which it was intended...." An express warranty of merchantability is found in the distributor's Agreement which also contains a provision requiring the commencement of any action for breach of the agreement within a period of one year after the occurrence of the breach.[1]

Paragraph 7 of the distributor's agreement provides:

7. CLAIMS

DISTRIBUTOR agrees that a thirty (30) day period after receipt of the Products is a reasonable time for inspection of the Products and for discovery of any claim whatsoever. Notice of any claim by DISTRIBUTOR must be given in writing within said thirty (30) day period. DISTRIBUTOR further agrees that notice thereafter is not seasonable and that any complaint which is not made in writing shall not be the basis for a claim,

counterclaim or setoff; and, without limitation, no defense, counterclaim or setoff shall be asserted against an action for the price where DISTRIBUTOR has failed to give the aforesaid written notice within thirty (30) days of the receipt of the Products. An action for breach of this Agreement (except for nonpayment by DISTRIBUTOR) must be commenced within one (1) year after the occurrence of the breach. All claims relating to shipment handling must be made directly to the carrier by DISTRIBUTOR. No Products will be accepted for return without the prior written authorization of SELLER and unless routed as indicated by SELLER.

Texas law recognizes that the period of limitation for an action based on a contract for sale may be set by an agreement of the parties pursuant to the provisions of Texas UCC Article 2.725.[2]

The issue presented in effect, is whether Pipe Systems filed its third-party complaint within a year after the alleged breach. Article 2.725, as adopted by the Texas legislature, provides:

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

---

1. We need only consider the allegations of breach of the agreement as they relate to the express warranty of merchantability because all other express or implied warranties, as well as recovery for consequential damages, are expressly excluded by the terms of the agreement in accordance with statutory requirements. Tex.Bus. & Comm.Code Ann. § 2.316 (Vernon 1968).

The requirements of Section 2.316 of the Texas UCC that the exclusion of implied warranties be in writing and be conspicuous are satisfied. The language of the agreement satisfies the corresponding exclusion provision of Pennsylvania law. 13 Pa.C.S.A. § 2316 (Supp.1983). We find

third-party plaintiff's contention that the distributor's agreement is unconscionable to be without merit. The question of conscionability *vel non* is one to be resolved by the court as a matter of law. *See also, Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308 (Tex.1978).

2. (a) An action for breach of any contract for sale must be commenced within four years after the cause of action was accrued. By the original agreement the parties may reduce the period of limitations to not less than one year but may not extend it. Texas Bus. & Comm.Code Anno., Art. 2.725 (Vernon 1968).

The question of when a cause of action for breach of warranty accrues has not been specifically addressed by Texas state courts. In *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456 (Tex.1980), the Texas Supreme Court held that article 2.725 establishes a cause of action for personal injuries and controls the limitation period for such actions, but it did not address the question of when the cause of action for breach occurs.

The Fifth Circuit in *Clark v. DeLaval Separator Corp.*, 639 F.2d 1320 (5th Cir. 1981), predicting Texas law, held that an action for breach of an implied warranty of merchantability accrues "on the date of tender of delivery." [3] Delivery had been tendered on certain milk equipment which was the subject of the action in January, 1973, and Clark had not filed suit until March, 1977, a period exceeding the four years called for in article 2.725(a).[4] The holding in Clark was recently adhered to in *Garvie v. Duo-Fast Corporation*, 711 F.2d 47 (5th Cir.1983) where the court again concluded pursuant to article 2.725 that a cause of action for breach of warranty accrues at the time the subject goods are delivered.

■ In *Garvie*, the concurring opinion of Judge Rubin, a member of the panel that decided *Clark*, expresses the strong view joined in by Judge Putnam that the result reached in both cases seems unjust. He questions the wisdom of holding that a plaintiff's cause of action is extinguished before an injury is incurred. The panel in *Garvie* acknowledges that no state court sitting in Texas has considered when a cause of action for a breach of warranty occurs. Judge Rubin makes reference to a number of Texas cases holding that when a written contract is involved, the period of limitations begins to run when the buyer discovers or should have discovered the injury. We find ourselves faced with the collateral question of the extent to which we are bound by the prognostication of the Fifth Circuit as to Texas state law particularly in light of Judge Rubin's strong, and we think well-founded, reservations. In *Factors Etc. v. Pro Arts, Inc.*, 652 F.2d 278 (2d Cir.1981) *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982), the Second Circuit was called upon to consider whether it was bound by the Sixth Circuit's prediction of a first impression issue of Tennessee law. The Second Circuit followed the Sixth Circuit ruling and concluded that substantial deference is to be accorded the ruling of the court for the Circuit which includes the state whose law is to be predicted. But the court also stated that it would not consider itself bound "when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule." [5] We too can envision circumstances where this court would be compelled to disregard a federal court interpretation of state law where the prediction is not sufficiently supported to satisfy the court's mandate in *Klaxon v. Stentor Mfg. Co., Inc.* This is so because the pre-

---

**3.** We note that the Third Circuit in *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711–12 (3d Cir.1982) reached the same conclusion in its interpretation of the corresponding provision in the Pennsylvania Uniform Commercial Code, 13 Pa.C. S.A. § 2725. The Court held that a claim against a pharmaceutical company based on a theory of implied warranty of merchantability with respect to the drug DES accrued at the time the drug was purchased by plaintiff's mother rather than at the time plaintiff discovered her injuries.

**4.** The court specifically rejected Clark's argument that an implied warranty of merchantability fits within the future performance exception of article 2.725(b).

Pipe Systems makes no argument here that an express warranty of merchantability would dictate a result different than that reached by the Court in *Clark* with respect to the future performance exception.

**5.** Professor Wright aptly questions why the decision of one court should have any persuasive effect on the other when neither can speak with authority. He further points out that three months after the Second Circuit's decision, a Tennessee Court concluded that both the Second and Sixth Circuit decisions were in error in their prediction of Tennessee law. C. Wright, *Federal Courts*, § 59 at 376 (4th Ed.1983).

diction of state law involves a prognostication subject to the changing indicia of available state law. We adopt the test enunciated by the court in *Factors, Etc.* and find that a district court is generally bound by the first impression prediction of state law by a Court of Appeals when a) that holding has not been disturbed by an Act of the legislature or a ruling of state court on point and applying state law, and b) the ruling of the Court of Appeals has not overlooked or misapplied available authority.

[3] With this in mind we feel bound by the Fifth Circuit's decision since there is no indication that these holdings have been disturbed by Texas state courts or the Texas legislature, cf. *e.g. Waters v. American Automobile Insurance Co.*, 363 F.2d 684, 689 (D.C.Cir.1966), nor does it appear that the decisions in *Clark* and *Garvie*, notwithstanding the comments of Judge Rubin, overlook the pertinent state court cases. *Factors, Etc. Inc.*, 652 F.2d at 283.

█ In the instant case Pipe Systems and Phillips agreed to reduce the limitations period in accordance with article 2.725(a) to one year as set forth at paragraph 7 of the distributor's agreement. Following *Clark* and *Garvie*, we find that this action accrued when the pipe liners manufactured by Phillips were delivered to Pipe Systems in May 1981. The third-party complaint filed March 23, 1983 against Phillips therefore is time barred by the terms of the distributor's agreement with respect to the breach of warranty claims. Accordingly, summary judgment will be entered in favor of Phillips as Count II of the third-party complaint.

Pipe Systems also alleges in its third-party complaint that Phillips is strictly liable for defects in the pipe liner. It seeks indemnity or contribution for any amount it is required to pay the plaintiff Hammermill because of defects in the pipe system. Hammermill seeks to recover from Pipe Systems the cost of repairs as well as consequential damages. Phillips demurs on the grounds that an action in tort cannot be sustained where, as here, the damage caused by the good involves only economic loss associated with costs of repair and replacement of the goods.

A noted distinction in products liability law turning on the nature of the harm suffered has arisen which distinguishes those actions based upon traditional contract theories involving warranties of merchantability and fitness for a particular purpose and those based upon tort law theories of strict liability or negligence. Those actions based on economic loss indicative of the contract strain involve attacks upon the suitability or quality of the product and draw damages which include the cost of repair and replacement, and loss of profit. This category is distinguished from actions sounding in tort seeking recovery for physical harm or property damage. Courts have increasingly noted this distinction and have sought to classify cases based upon the nature of the harm suffered. The classification process is an evolving aspect of state law and remains an area characterized by uncertainty within each state and from jurisdiction to jurisdiction.

█ Pipe Systems' tort claims is not governed by the terms of the distributor's agreement and, accordingly, we are not bound by the provisions requiring the application of Texas law. We must therefore reconsider the choice of law question to determine what state's law should apply to this cause of action.

The principles controlling choice of law determinations in Pennsylvania in tort cases were set forth in the landmark case of *Griffith v. Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). In *Griffith*, a tort case involving an airplane accident in Colorado, the court departed from Pennsylvania's traditional adherence to the doctrine of *lex loci delicti* where the place of injury dictated the choice of law determination. The court adopted a flexible two-part analysis which required consideration of both the contacts of each jurisdiction, *see* Restatement, § 145, and an interest analysis of the relevant state's policies with respect

to the controversy. *See, Melville v. American Home Assurance Company,* 584 F.2d 1306, 1311–13 (3d Cir.1978). This analysis has been held to be applicable in tort cases involving third-party contribution. *See, Elston v. Industrial Lift Truck Co.,* 420 Pa. 97, 216 A.2d 318 (1966).

In determining which jurisdiction's law should apply in a tort action we look first to the contacts that each jurisdiction has with the subject matter of the lawsuit. In this light, we think there are important factors suggesting that Pennsylvania law should apply. The pipe liner was designed for use in, and made a part of, a pipe system constructed and installed in Pennsylvania for the benefit of the plaintiff, a Pennsylvania corporation. The system was designed to carry effluent from a major industrial plant to a municipal waste treatment plant in anticipation of its eventual discharge into Lake Erie. The alleged defect giving rise to this claim was discovered after installation and after the system was activated. Any damages resulting from the separation of pipes within the system were sustained in Pennsylvania.

In considering the second part of the *Griffith* analysis we find that this issue of products liability law involves interests and policies which are of considerable consequence to the jurisdiction where the alleged injury occurred. *See,* Restatement Second, Conflict of Laws, § 147. The classification of products liability cases under strict headings which might preclude an action sounding in tort is an area of law about which Pennsylvania has an abiding interest. In light of the foregoing, we will apply Pennsylvania law to this portion of the third-party plaintiff's claim. *See, Osterholt v. St. Charles Drilling Co.,* 500 F.Supp. 529, 533 (E.D.Mo.1980).

Courts applying Pennsylvania law have considered the distinction recognized in most jurisdictions between tort recovery for physical injuries and warranty recovery for economic loss. The emerging trend in Pennsylvania has been to examine the "type of harm" suffered in order to determine the appropriate remedy. This ap-

proach was most notably articulated by the California Supreme Court in *Seely v. White Motors Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) and adopted by the Pennsylvania Superior Court in *Industrial Uniform Rental Company, Inc. v. International Harvester Co.,* —— Pa.Super. ——, 463 A.2d 1085 (1983). The Court in *Seely* reasoned that while a consumer should not bear the risk of physical injury from a product, one could be charged with knowledge that a product may not perform up to "economic expectations." 63 Cal.2d at 18, 45 Cal.Rptr. at 23, 403 P.2d at 151.

The Third Circuit has had occasion to consider the *Seely* rationale. In *Posttape Associates v. Eastman Kodak Co.,* 537 F.2d 751 (3d Cir.1976), the court held that lost profits resulting from defective film were not recoverable where the damages "arose from a non-dangerous impairment of quality of the product ..." 537 F.2d at 756, n. 5. In *Pennsylvania Glass Sand Corporation v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir.1981), the court decided that a fire which damaged a front-end loader involved a hazardous defect compensable under tort law. In *Jones & Laughlin Steel Corp. v. Johns Manville Sales Corp.,* 626 F.2d 280 (3d Cir.1980), after a discussion of an Illinois UCC provision identical to that found in Pennsylvania, the Court held that a purchaser of a roof could not recover under a strict liability theory based on the roof's poor performance.

Important policy considerations underlie the refusal of courts to extend recovery on strict liability to commercial transactions involving primarily economic loss. Economic loss is nearly always incurred only by the owner of the product, and the owner is generally in a position to guard against such losses by bargaining for warranty protection. The Uniform Commercial Code as adopted in Pennsylvania provides a mechanism through section 2316 to impose reasonable limitations on warranties. To the extent the doctrine of strict liability does not permit such limitations the legislative intent behind the passage of section 2316 would be frustrated were tort reme-

dies made applicable to commercial disputes involving primarily economic loss. As the Pennsylvania Superior Court stated in *Industrial Uniform,* "the extension of strict liability to cover economic loss in effect would make a manufacturer the guarantor that all of its products would continue to perform satisfactorily throughout their reasonably productive life." —— Pa.Super. at ——, 463 A.2d at 1085, *see also, Clark v. International Harvester Co.,* 99 Idaho 326, 335, 581 P.2d 784, 793 (1978).[6]

We find that the damages resulting from the alleged malfunction of the pipe liner supplied by Phillips constitutes an economic or commercial loss of a type protected by the law of warranty. Essentially, the damages which have resulted are to the pipe system itself and the allegations of possible additional damage are unsupported by any evidence.

Pipe Systems submits that the question of whether or not the pipe presented a dangerous or hazardous defect is an issue of fact. It contends that discharge of the untreated sewage resulting from the allegedly defective pipe liner could contaminate the surrounding wetlands and waters and also affect animal and fish life in the area. As a result, Pipe Systems argues that damages may include the fines and penalties associated with violations of the regulations of the Department of Environmental Resources as well as monetary damages to private parties. However, Pipe Systems offers no evidence that would substantiate the likelihood of damages to other property. And although Hammermill has made a claim against Pipe Systems for consequential damages resulting from the pipe liner malfunction, as we have previously noted, any claim for consequential damages against Phillips is specifically precluded by the distributor's agreement executed with Pipe Systems. Pipe Systems' recovery, therefore, is limited to the dam-

age that the product, the pipe liner, has caused to itself. This is a commercial loss of the type protected by the law of warranty. Accordingly, summary judgment is granted in favor of the third-party defendant as to Count I of the third-party complaint.

---

**6.** We note that Texas courts, similarly, have refused to extend the application of the tort doctrine of strict liability to commercial cases involving economic loss. Courts in Texas have demonstrated a consistent preference for the result in *Seely v. White Motor Co.,* supra. *See, e.g., Mid Continent Aircraft Corporation v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308 (Tex.1978); *Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Tex.1977); *Melody Home Manufacturing Co. v. Morrison,* 455 S.W.2d 825 (Tex.Civ.App.1970, no writ).