**WEYHER/LIVSEY CONSTRUCTORS, INC., Plaintiff–Appellant,**

v.

**INTERNATIONAL CHEMICAL CO., Defendant–Appellee.**

No. 88–8361.

United States Court of Appeals, Eleventh Circuit.

Jan. 25, 1989.

Lee C. Davis, Griffin, Cochrane, Marshall & Elger, A. Romaine Lubs, Atlanta, Ga., for plaintiff-appellant.

Donald E. Herrold, Herrold, Herrold, Craige & Horgan, Inc., Jack N. Herrold, Tulsa, Okl., for defendant-appellee.

Before HILL and ANDERSON, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

* Honorable Jesse E. Eschbach, Sr. U.S. Circuit Judge, for the Seventh Circuit, sitting by designation.

ESCHBACH, Senior Circuit Judge.

This appeal challenges the district court's granting of the appellee's motion for involuntary dismissal pursuant to Fed.R.Civ.P. 41(b). The appellant raises three issues on appeal. First, the appellant contests the district court's ruling that the terms on the reverse side of the purchase order were inconspicuous and unenforceable. Second, it argues that the district court should have considered provision twelve of the purchase order in determining whether the appellant gave the appellee timely notice of breach. Finally, the appellant contends that the district court applied an incorrect measure of damages to its breach of warranty claim. For the reasons stated below, we reverse the district court's ruling that the terms on the reverse side of the purchase order were unenforceable because they did not meet the Uniform Commercial Code's ("UCC") conspicuous requirement, and without reaching the other two issues on appeal, we remand so that the district court can determine whether the terms are enforceable by looking to general contract principles under Texas law.

## I

The appellant, Weyher/Livsey Constructors, Inc. ("Weyher"), was employed by the army as a general contractor for the construction of three coal-fired steam generating boilers in Texarkana, Texas. As part of its agreement with the army, the appellant was responsible for testing the boilers to make sure that they met certain specifications. In order to test them, the appellant needed 2,000 tons of coal. Therefore, it contacted the appellee, International Chemical Co. ("Interchem"), a coal broker, for assistance in acquiring the coal.

On July 25, 1984, the appellant sent the appellee a standard purchase order form for 2,000 tons of stoker grade coal. The purchase order specified that the individual pieces of coal could be no larger than one and a quarter inch and that no more than 37% of all the coal could be capable of passing through a quarter inch screen. On the front of the purchase order, above the signature line, appeared the statement "general conditions on reverse side are a part of this agreement." The back of the purchase order contained numerous terms, including provision twelve in which the appellee warranted the coal for a period of at least one year.[1] The appellee signed and accepted the purchase order without objecting to any of the terms on the reverse side.

Between October 15 and November 16, 1984, the appellee purchased coal from the Great American Coal Co. and delivered it in installments to the appellant at Texarkana. Although the appellant did not inspect the separate allotments of coal delivered, it eventually discovered that some of the coal exceeded the maximum size limitation delineated in the purchase order. Even though employees of the Great American Coal Co. broke up the oversized coal, the appellant's attempts to use the coal in testing the boilers failed because the coal allegedly had too many small pieces in violation of the purchase order. By a letter dated February 7, 1985, over two and a half months after the appellee delivered the last installment of coal, the appellant notified the appellee that, in its opinion, the coal did not conform to the specifications listed in the purchase order. The appellant eventually resold the coal to another party and purchased replacement coal.

The appellant then sued the appellee in the district court, based on diversity jurisdiction,[2] for breach of contract and other incidental and consequential damages. The parties proceeded to a nonjury trial. After the appellant had completed the presentation of its evidence, the appellee moved for an involuntary dismissal pursuant to Fed. R.Civ.P. 41(b).[3] The district court granted the motion.

1. Whether this warranty provision gave Weyher a full year to *notify* Interchem of a breach of warranty is a matter of interpretation, which is best left to the district court.

2. The appellant is a Delaware corporation whose principal place of business is in Georgia.

The appellee is an Oklahoma corporation whose principal place of business is in Oklahoma.

3. Fed.R.Civ.P. 41(b) provides in relevant part:

After the plaintiff, in an action tried by the court without a jury, has completed the pre-

## II

The appellant contends that the district court erred in ruling that the terms on the reverse side of the purchase order were unenforceable because they were inconspicuous. The district court made a finding from the bench that "[t]he terms and conditions on the reverse side of the [purchase order] are not enforceable and do not govern the agreement in that they are *not conspicuous* and a reasonable person would not have noticed it. [sic] In fact, they are very difficult to read on the original [purchase order] and border on being illegible." 8 Tr. 1218–19 (emphasis added). Additionally, in its order granting the appellee's motion for involuntary dismissal, the court, relying on the UCC's definition of conspicuous, ruled as a matter of law that "[t]he terms and conditions on the reverse side of the printed contract ... are *inconspicuous* and not enforceable." District Court's Order at 7 (citing U.C.C. § 1–201(10)) (emphasis added). Weyher argues that the UCC does not require the terms on the reverse side of the purchase order involved in this case to be conspicuous in order to be enforceable. This issue of law is subject to plenary review. *See Gulf States Paper Corp. v. Ingram*, 811 F.2d 1464, 1468 (11th Cir.1987); *Daley v. United States*, 792 F.2d 1081, 1085 (11th Cir.1986).

Because the district court found that Texas law governs,[4] we must look to the UCC as codified in Texas. "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.... Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." Tex.Bus. & Com.Code Ann.

§ 1.201(10); *see Ellmer v. Delaware Mini-Computer Sys., Inc.*, 665 S.W.2d 158, 159 (Tex.Ct.App.1983). In the context of a sale of goods, as in the case before us, the Texas Business and Commerce Code uses the term conspicuous in only one provision. Section 2.316 states that "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Tex.Bus. & Com.Code Ann. § 2.316(b). The purpose of this provision is to "protect a buyer from unexpected and unbargained language of disclaimer...." *Id.* Comment 1; *see Clark v. De-Laval Separator Corp.*, 639 F.2d 1320, 1323 (5th Cir. Unit A 1981). Therefore, only disclaimers of warranties must be conspicuous in order to be enforceable. *See Singleton v. LaCoure*, 712 S.W.2d 757, 759 (Tex.Ct.App.1986) (Section 2.316 "directs that warranties may be *excluded or modified* if they are in writing and conspicuous." (emphasis added)).

The reverse side of the purchase order contains numerous terms, only two of which are warranty provisions governing the quality of the coal. Provision ten provides:

Seller warrants that said merchandise will correspond with the description of the same on this Purchase Order, will conform to any applicable specifications, and shall be of good merchantable quality and fit for the known purpose for which it is sold. Seller also warrants that said merchandise is free and clear of all liens and encumbrances whatsoever and that Seller has a good and market-

---

sentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.... If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision ... operates as an adjudication on the merits.

4. Although the reverse side of the purchase order contained a choice-of-law provision stating that Georgia law governed the agreement, *see* Plaintiff's Exhibit No. 5, the district court found that provision, along with all the other terms on the reverse side, unenforceable. The district court went on to find that "Texas law governs the transaction, Texas being the state where the most significant contacts occurred...." 8 Tr. 1219. Because neither party specifically challenges the district court's application of Texas law, we are bound by that determination.

able title to same, and Seller agrees to hold Purchaser free and harmless against any and all claimants to said merchandise.

Plaintiff's Exhibit No. 5. Provision twelve provides:

Seller warrants that all material and/or equipment furnished under this contract shall be of good quality and workmanship and free from all defects, latent or patent. Seller shall be liable for the cost of removal, repair or replacement at buyer's option, reinstallation, and transportation without charge to purchaser any defective material and/or equipment and to remedy any defects not due to ordinary wear and tear or improper maintenance for a period of one (1) year after startup of said equipment or within the guarantee period set forth in the applicable plans and specifications, whichever are longer.

*Id.* These warranty provisions do not exclude or modify the implied warranty of merchantability or the implied warranty of fitness. Instead, they are express warranties which impose warranty obligations on the appellee in addition to the implied warranties of merchantability and fitness. *See Vaughn Bldg. Corp. v. Austin Co.,* 620 S.W.2d 678, 680 (Tex.Civ.App.1981) ("[A] provision for an express warranty, without any disclaimer of implied warranties, does not limit or exclude" the implied warranties.), *aff'd,* 643 S.W.2d 113 (Tex.1982). Because neither of these warranty provisions nor any other provision on the reverse side of the purchase order is a disclaimer of warranties, none of these terms had to be conspicuous in order to be enforceable.

Our view that only disclaimers of warranties need be conspicuous is supported by another UCC provision. Section 2.313, which provides for the creation of express warranties by affirmation, promise, description, or sample, imposes no requirement that the express warranty be conspic-

uous. *See* Tex.Bus. & Com.Code § 2.313. Therefore, the district court erred in ruling that the UCC, as codified in Texas, required the terms on the reverse side of the purchase order to be conspicuous in order to be enforceable.[5]

Our reversal of the district court, however, does not necessarily mean that the terms on the reverse side of the purchase order are part of the agreement. We merely hold that under the Texas Business and Commerce Code the terms did not have to be conspicuous, as that term is used and defined in the code. Rather, the district court must now look to general contract principles under Texas law to determine if the terms are enforceable. The district court, in its discretion, may receive additional evidence if such evidence would aid the court in resolving this issue.

### III

The appellant raises two other issues on appeal: (1) the district court erred in ruling that it was barred from all remedies because it failed to give the appellee timely notice of breach; and (2) the district court applied an incorrect measure of damages to its breach of warranty claim. We do not need to reach either of these issues.

In determining that the appellant did not give the appellee timely notice of breach, the district court relied solely on § 2–607(3)(a), which requires a buyer to notify a seller of a breach of contract within a reasonable time. The appellant argues that the district court should have considered provision twelve of the purchase order, in which the appellee warranted the goods for a period of at least one year, in determining whether timely notice of breach was given because this provision represented an agreement between the parties to substitute a one-year notification requirement for the UCC's reasonable time requirement.[6] This argument, however,

---

5. The appellant also argues that the terms on the back of the purchase order were conspicuous as written. Because we hold that the terms did not have to be conspicuous in order to be enforceable, we need not decide whether they were conspicuous as written.

6. Section 1.204 expressly provides that "[w]henever this title requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement." Tex.Bus. & Com.Code Ann. § 1.204(a). Therefore, the parties could agree to alter the

assumes that provision twelve, which is located on the reverse side of the purchase order, is binding on the parties. As discussed earlier, this is a determination that the district court must make on remand.

The appellant also claims that the district court applied an incorrect measure of damages to its breach of warranty claim. The district court ruled that the appellant could not recover its cost of cover because it did not properly effect cover under § 2–712. The appellant, however, argues that because it accepted the goods and did not revoke its acceptance, it is entitled to damages under § 2–714. Although the district court did state that the appellant could not recover its cost of cover, *see* District Court's Order at 11, it is clear that the district court did not determine whether an actual breach of warranty occurred. The district court expressly stated:

> The court makes no finding as to whether the coal when delivered contained more than the maximum 37 percent fines or whether a stable burn could be obtained or whether a given amount of the coal was actually used by the plaintiff. A finding is unnecessary for resolution of the motion.

8 Tr. 1220. Therefore, until the district court determines whether a breach of warranty has occurred, any appeal on the issue of damages for breach of warranty is premature.

## IV

For all the foregoing reasons, the decision of the district court is

REVERSED AND REMANDED.

---

reasonable time requirement of § 2–607(3)(a). *See Kiser v. Lemco Indus., Inc.,* 536 S.W.2d 585, 589 (Tex.Civ.App.1976) ("When any action is to be taken within a reasonable time, § 1.204(a)

specifies that the parties may fix by agreement, as the parties here fixed, a time which is not manifestly unreasonable.").